PATTERSON v. MILLS et al.*

Sac. No. 909; May 20, 1902.

68 Pac. 1034.

Water Rights—Priority.—Where the Defendant Alleges, in an Action Involving the priority of right to take water from a stream, that his ditches were constructed prior to those of plaintiff, at a time when the lands described in the complaint were vacant and unappropriated public lands, the failure to find on such allegation vitiates a verdict for plaintiff, as such facts would render defendant's right paramount to the right of plaintiff.

Appeal.—Where the Evidence Relating to a Finding of Fact is Conflicting, the finding will not be disturbed on appeal.

Water Rights—Priority.—The Evidence in an Action to determine the priority of right to divert the waters of a river claimed by plaintiff, who was a lower riparian owner, by adverse user, showed that plaintiff for a number of years had removed dams erected by defendant, but that the latter had rebuilt them. Plaintiff's ditches were originally constructed under a license from a former owner of defendant's lands, and had originally connected with the ditch of such former owner, and one of the ditches was constructed for the joint use of the parties. Held, insufficient evidence of adverse user to establish plaintiff's prior right.

Water Rights.—Where a License to Construct a Ditch is given on consideration that the ditch shall be for the joint use of the licensor and licensee, the right of the licensee to use the ditch can only be lost by abandonment.

APPEAL from Superior Court, Siskiyou County; J. S. Beard, Judge.

Action by J. R. Patterson against Robert Mills and another. From a judgment for plaintiff and from an order denying a new trial the defendants appeal. Reversed.

O'Neill & Butler and Warren & Taylor for appellants; Gillis & Tapscott for respondent.

SMITH, C.—The object of this suit is to determine the reciprocal rights of the parties to the waters of Shasta river, which flows in a general northeasterly course first through

*For subsequent opinion in bank, see 138 Cal. 276, 71 Pac. 177.

the lands of the defendants, and then through those of the plaintiff. The plaintiff recovered judgment, from which and an order denying a new trial the defendants appeal.

The plaintiff is the owner of two ditches heading on the defendants' land; the upper on the east, the lower on the west, side of the river. The upper ditch is alleged and found to be of a capacity of two hundred and fifty inches; the lower of one hundred and fifty (both measured, it will be understood here and elsewhere, under a four-inch pressure); and it is found by the court that for forty-five years or more (i. e., from the year 1855) the water of the river, when sufficient for both parties, has been habitually diverted and adversely used by the plaintiff and his grantors in the irrigation season to the full capacity of the ditches, and that when the water became insufficient (which was about the month of July each year) one-half of the water flowing in the river at the upper or south boundary of defendants' land was so diverted and used. The defendants are the owners of three ditches heading above those of the plaintiff, known respectively as the "Reese Ditch," the "Beaver Dam Ditch," and the "Stewart Ditch," which, it is alleged, were constructed the first two in the year 1853, the third in the year 1854, at which times all the lands described in the complaint were vacant, unappropriated public domain, and the plaintiff's ditches were not existing. The first, as constructed, was of the alleged capacity of two hundred, the second of one hundred, and the third of one hundred and fifty, inches. These ditches, it is alleged, have ever since continued to be of the same capacities, and by means of them the waters of the river were appropriated, and have ever since been diverted to the full extent of their capacities, and used on the lands now owned by the defendants, then occupied by their predecessors in title. The defendants also claim to be entitled to one-half the water flowing in the plaintiff's upper ditch, but this claim (which was rejected by the court) will, for the present, be left out of consideration. Thus it will be seen that the plaintiff claims four hundred inches of water when there is eight hundred inches or more in the river, and when there is less one-half; and that the defendants claim four hundred and fifty inches at all stages of the water. But it is alleged in the complaint and found that until the month of July of each year there is sufficient water to supply the claims of both parties, and

the controversy, therefore, relates only to the latter period of the year, when there is less than eight hundred and fifty inches of water in the river. The defendants' claim, as resting on an alleged prior appropriation, and therefore being prior in time, will be first considered.

With regard to this the court find that the Reese ditch was not constructed until 1885, and that the Beaver dam ditch was constructed "about the year 1855," and the Stewart ditch "about the year 1854 or 1855"; but that of the two last-mentioned ditches the former had a capacity of fifty, and the latter of one hundred, inches only. It is also found that the water diverted by these ditches is used to irrigate the lands of the defendants, and, in effect, that it has been used by the defendants and their grantors "since about the year 1854 or 1855." But there is no finding on the allegation of the answer that when the ditches were constructed the plaintiff's ditches were not in existence, and that the lands described in the complaint were vacant, unappropriated public domain. The findings, therefore, fail to dispose of a material and important issue in the case; for, if the allegation of the defendants is true, the defendants' predecessor, by his appropriation of the water, acquired a right to it paramount to the rights subsequently acquired by the plaintiff as riparian proprietor. The appellants also claim that the findings of the court as to the date of the construction of the Reese ditch, and as to the original capacity of the Beaver dam ditch and of the Stewart ditch, are not justified by the evidence. But the evidence on these points is, we think, conflicting, and the findings, therefore, cannot be disturbed.

The plaintiff's claim rests upon the finding of an adverse user, and another finding to the effect that the reciprocal rights of the parties, each to half of the water, have always been recognized by both. The latter finding has no support in the evidence, and may be disregarded. As to the other, it is clear that the finding cannot be maintained. The plaintiff testifies that during the last fifteen years (since the defendants have owned their lands), whenever the water was low in the river, he has habitually removed the dams of the defendants so as to let the water run down to his own ditch. But he also testifies that in all cases the dams were immediately replaced, and also that he did not know whether the defendants had any notice of his acts. His user, therefore,

has not been uninterrupted during that period: Jones, Easem., sec. 187. As to the preceding period, it appears that the plaintiff's ditches were constructed by his predecessor under license from Stewart, the then owner of the land, and his original entry was, therefore, not adverse. It seems also, with reference to the upper ditch, that it originally headed on the Stewart ditch, and not on the river, and that it was constructed, not only with the license, but for the joint use, of the parties, and that it was afterward thus used, at least until the coming of the plaintiff. The only testimony as to the quantity of water used during this period is the mere vague statement of the plaintiff that he used more than half of the water. But it appears that the predecessors of the defendants were at the same time diverting the water by the Beaver dam and Stewart ditches. We are of the opinion, therefore, that the plaintiff has wholly failed to sustain his claim to the quantity of water claimed by him.

With regard to the claim of the defendants to a joint interest in plaintiff's upper ditch, the testimony of Stewart is that the license for the construction of the ditch was given with the understanding that it should be for joint use; and this statement is natural and probable, and is not contradicted. Assuming, therefore, such an agreement, the rights of the defendants' predecessors and of themselves could be lost only by abandonment, of which there is no evidence (1 Bouv. Law Dict., "Abandonment"; Keane v. Cannovan, 21 Cal. 291, 82 Am. Dec. 738; 1 Notes Cal. Rep. 195; Ferris v. Coover, 10 Cal. 589), though there is some evidence of disuser. On the evidence as it stands, therefore, it would seem that the defendants still have a right to use the ditch, and it seems from the testimony of the plaintiff that during the last fifteen years this right has been constantly asserted by the actual, though interrupted, use of the water in the ditch. This agreement, however, related only to the use of the ditch, and did not affect the relative rights of the parties to the use of the water of the river. Nor do we think that these were affected by the judgment in the former suit of plaintiff against Stewart, pleaded as an estoppel.

We therefore advise that the judgment and order appealed from be reversed and the cause remanded for a new trial.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded for a new trial.